We will hear argument next in our fourth case, 18-2102, Grover v. Office of Personnel Management. Mr. Jackman, whenever you're ready. When this court found in the previous iteration of this case that when a CFR differs from the statute, OPM loses because the statute governs and not the CFR. The case was then sent back for calculation of damages. At that time, when damages were supposed to be calculated, OPM introduced two more CFRs, neither of which were supported by any action of Congress in its entire history, and both of which differed from the statute itself. Consequently... So which are the two regulations that you think are unsupported in the statute? And I'd say this, I guess, against the background. There's a quite general delegation of rulemaking authority to OPM for CSRS in 83-47, which I think we cited in the last round. So what are the specific CFRs that you think are unsupported by the statute? Because I think that, at least for me, is really what this is now focused on, whether each of the exclusions of amounts received that OPM has made are, in fact, supported by statutorily authorized regulations. And the government goes through in seven or eight pages in its brief and says, this one here, this one here, this one here. So I'm trying to focus very concretely on that. The CFRs that are involved are 19 CFR 24.16, B13 and 14, and I believe the other is 5 CFR 844.102. I call, of course, attention to Appendix Pages 60-67, in which OPM used these charts showing following amounts of money were not creditable for retirement, quote, because as it says in footnote 2, which is referenced, premium pay, for example, is not subject to retirement withholdings and therefore not creditable for retirement purposes. But there's never been a statute in the history of this country that ever authorized the use of deductibles to determine what is or isn't admissible in counting up the retirement annuity. And the statute does not agree with the effort of OPM not to allow certain money into the calculation. When it was sent back, the administrative judge at page 8 of the opinion below stated the two CFRs as the reason for the determination that there were no damages. But the two CFRs are different from their statutes. And precisely at page 8 of the judge's decision, he mentions the two CFRs. Because of that, the same argument that was raised previously, which this court adopted, that if the statute differs from the CFR, the CFR loses. And that's what's involved in the background of this case. I think that's the issues. OK. Well, we've reserved the rest of my time for potential rebuttal. OK. And we'll hear from the government who will explain why the regulations are supported by the statute, presumably, or make the attempt anyway. Mr. Jackman, your notes. Oh, thanks. Thank you, Your Honor. May it please the Court. The MSPB correctly found that Mr. Grover failed to meet his burden to demonstrate that he's entitled to a retirement annuity larger than that calculated by OPM in this case. As Mr. Jackman went through, this Court previously heard this case, and it was determined, as I'm sure the Court recalls, that there was a potential inconsistency in parts of the retirement record, and therefore OPM was required to resolve that inconsistency before determining conclusively the amount of specifically overtime pay that Mr. Grover had received. On remand, OPM provided to the Board the pay stubs that this Court correctly identified were well-positioned to help resolve this apparent conflict, and they did indeed do that. The pay stubs demonstrate that Mr. Grover, contrary to his previous longstanding arguments, did not receive anything close to the statutory maximum of $17,500 of potentially-includable COPRA overtime in any of the relevant years. And so what explains the large discrepancy is these other categories of compensation, premium pay, relocation allowances, et cetera. Now, the statutory scheme specifically provides, as we discussed in the last iteration, that for a customs officer such as Mr. Grover, overtime pay is includable in retirement annuity calculations up to the half of the statutory maximum of that pay, or $17,500. That, as we've now determined, was never received in an amount approaching that statutory maximum. It became clear from the record in a declaration from a senior member of the preparer of the IRRs that the denotation in the previous IRRs of $17,500 was designed only to put OPM on notice that some portion of that type of pay had been received and that that was the statutory maximum allowable to be included. So that portion of the case has been resolved. Now Mr. Grover has shifted gears and instead argues that all of his gross pay is includable by dint of the fact that it was received and disagrees with the statutory and regulatory basis. There is, of course, as we pointed out in our brief, both statutory and regulatory support for OPM's declination to include those portions of Mr. Grover's pay in his retirement annuity calculation. The premium pay that Mr. Grover received is clearly, from the record, under the COPRA law, 19 U.S.C. 267. 19 U.S.C. 267 itself, the statute provides, that premium pay provided for under this subsection may not be treated as overtime pay or compensation for any purpose. So that portion of the pay, which includes, if you can read down the statute and read down Mr. Grover's pay sub, you can see that matches up exactly Sunday differential pay, night differential pay, and holiday pay. Those types of pay are all specifically by that statute and then by the regulation, which in no way conflicts with that statute but interprets it, makes a little bit clearer. This is 19 CFR 24.16. It makes abundantly clear that premium pay is not includable for federal retirement benefit purposes. So those portions of the pay are clear. Now, Mr. Grover's brief refers to some other statutes that also provide for premium pay, and in some cases those may be included in a retirement annuity calculation for certain types of employees. But your position is that he doesn't qualify for those? Right. Not a law enforcement officer in particular? In one circumstance, yes. The one specifically relied on in Mr. Grover's brief, it applies only to law enforcement officers. There's no allegation that Mr. Grover was a law enforcement officer. The statute defines what a law enforcement officer is in a way that makes it clear that Mr. Grover was not one. There is another provision there that provides for the inclusion of pay. When I say there, I mean in 5 U.S.C. 8331, which defines the components of basic pay, which is essentially the operative term for the calculation of a retirement annuity. There is provision for inclusion of premium pay under 5 U.S.C. section 5545C1. That type of pay, there's no allegation that that is the type of pay here. It specifically applies to overtime or extra work that is a substantial part of which consists of remaining in a standby status rather than performing work. No indication that Mr. Grover received any type of this pay. In fact, we can tell from the amount of premium pay Mr. Grover received that this is not the type of premium pay he was paid because that type of pay is statutorily limited to a premium of 25%, whereas at least portions of the premium pay that Mr. Grover received were up to 50% premium. That's allowable under COPRA, which is clearly the law under which Mr. Grover was paid this premium, but not under this other type of premium pay. COPRA, of course, as I previously stated, provides expressly that if an officer, a customs officer, is paid premium pay under that law, they are not entitled to any premiums under any other law. That's in the statute at section C2, 19 U.S.C. 267 C2. The final component is the relocation allowance. That was paid to Mr. Grover in three of the relevant four years, 2005, 2006, and 2007. The statute under which that is paid is actually not abundantly clear from the record, and I should make clear that in preparing for oral argument today, it became clear that we should have also cited in our brief to 5 U.S.C. 5753, which is another statute that provides authority to pay relocation bonuses. 5753? That's correct, Your Honor. It's unclear from the record we tried to determine whether we could tell with certainty whether Mr. Grover's relocation allowance, which is reflected, was paid under this 5 U.S.C. 5753 or whether it was under, as Mr. Grover alleges, 5 U.S.C. 5724A. In either case, it's not includable for retirement annuity purposes. 5753, if that is the basis for Mr. Grover's relocation allowance, that statute itself makes abundantly clear that, quote, a bonus under this section is not part of the basic pay of an employee for any purpose. The statute 5 U.S.C. 5724A. Just remind me, everything has to come back into this term basic in order to qualify? That's correct, Your Honor. So the statute 5 U.S.C. 8339 defines the calculation of the retirement annuity. That statute uses the term average pay. The definition statute 5 U.S.C. 8331 defines average pay as basically basic pay. So then you go to basic pay, and the definition statute then goes on to describe what is included in basic pay, what is not included in basic pay. And many of the other statutes and regulations refer this is basic pay, this is not basic pay. And so to be included in the retirement annuity calculation, I think it is a useful shorthand to suggest, Judge Toronto, to whether basic pay is used in the statute or regulation or not. Now, as we state in our brief, 5 CFR 575.209D provides expressly that a relocation incentive is not part of an employee's rate of basic pay for any purpose. And this makes sense because the purpose of a relocation allowance, of course, is to recompense the employee for a one-time cost of relocation and not to form a portion of their ongoing pay or ongoing compensation such that that should be then reflected in their retirement annuity and their high three over the course of their entire career. The purpose of the calculation of the retirement annuity is to say, how much was this person's overall total compensation for these high three years? And then the retirement annuity is calculated based thereon. And so one-off payments like relocation allowance or a premium pay are, by statute and regulation, not included in those calculations. Mr. Grover, in his brief and today, also refers again to 5 CFR Section 844. As we state in our brief, there's no indication that there's any reliance on this section at all. This section of the federal regulations applies to FERS and not to CSRS. So there's no indication that has any applicability here. The regulations that do have applicability here do not conflict with statute. They are either in the case of 5 CFR 575.209, in fact, reflects almost exactly the language of the statute which I cited here today, 5 U.S.C. Section 5753. Also, so does 19 CFR Section 24.16, closely mirror the language and provide a little bit more clarity to the language of the statute, 19 U.S.C. Section 267, which is the COPRA statute that we've discussed at length in both of these cases. Subject to any further questions from the Court, thank you. I remind the Court what I said before, Documents Appendix Pages 60 to 67, specifically exclude amounts of money from the calculation of the retirement annuity for the sole purpose that the deduction method of calculation shows that there were no deductions from certain pay and, therefore, it's not includable. But no Congress in the entire history of the United States ever authorized that method of calculating what is or isn't to be included in the calculation of an annuity. The argument in Pages 11 through... Mr. Jackman, can you just double-check me on something? I guess my understanding was that what the government did on the remand was to look at essentially the method that OPM had used, which was backing out certain things, and then also at the pay stubs to kind of look at the individuals, and they turn out to be roughly the same. Why is that not a sort of an important double-checking method with each of the elements that were actually on the pay stubs? I use the term pay stubs, you know what I mean. To identify under the very specific regulations and statutes that we just heard about why certain elements of pay that were, in fact, received don't qualify for this final three average calculation. I agree with what you said. That makes sense to try to do that. When it went back, it was never raised that Mr. Grover was not a law enforcement officer. I found nothing in the entire record below that specifically stated he was not a law enforcement officer. You'll remember more than I. I thought that the statute, the very same statute, treats law enforcement officers and customs and border protection officers in two different sub-paragraphs so that they are pretty evidently distinct and that Mr. Grover is very clearly the latter, the customs and border protection officer. One does say relocation incentive not included in base pay, and another says explicitly excluding premium pay, but these were not in compliance with the statutes, and consequently they fail. OPM has introduced now three different CFRs which have no statutory authority, and consequently, and I see no conflict between a law enforcement officer and a customs and border patrol official. We've heard nothing but for the last several years how they're protecting the country from drug smugglers and all kinds of people coming in. They carry weapons, and they are law enforcement officials, so I'd say that doesn't really make any difference as far as the calculation of their retirement because it's included. The specific issue of whether or not Mr. Grover was a law enforcement official was never raised below. They simply used the regulations to manipulate the numbers, and I think that the charts that I mentioned several times, and Appendix 60 to 67, clearly shows that what they used was the so-called deduction method, and this court had previously found that they would not win when that didn't match the statute. So I believe that they have failed to show anything below, and if you read page 8 of the judge's decision, he relies on the two CFRs that have no statutory authority and differ from the statute. I think so. Thank you, Mr. Jackman, and thank you. Thank you.